## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

DARRYLL JOEL McKENZIE,                    Case No. 4:11-cv-45-RH-WCS

      Plaintiff,

vs.

WALTER McNEIL, et al.,

      Defendants.

---

### RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, by and through the undersigned attorney, and responds to Defendants' Motion for Summary Judgment and would show:

1.  Defendants have filed a Motion for Summary Judgment on these grounds:

    a.   "Plaintiff's Claims on First Use of Force are Heck-Barred"

    b.   "Plaintiff Hasn't Shown a Valid Excessive Force Claim"

    c.   "Ragans, Swift, Norris, Givens and Derringer Were Not There"

    d.   "Plaintiff Has Not Stated a Retaliation Claim"

    e.   "No Deliberate Indifference Shown as to Singer or Anderson"

    f.   "No Failure to Treat Claim as to Defendant Singer"

    g.   "Plaintiff Cannot Recover Compensatory or Punitive Damages"

2.  Plaintiff responds as follows:

a. A "*Heck*-bar" does not implicate jurisdiction. Plaintiff's claims are not inconsistent with and do not necessarily imply the invalidity of the Disciplinary Report and, finally, this is an issue already decided by the Court. **Doc 37, Order Denying Motion to Dismiss**. Defendants have not brought forward new admissible evidence to justify re-litigation of this issue.

b. Defendants' claim that Plaintiff hasn't shown a valid excessive force claim is based on their rendition of the facts, not his. It is disingenuous for Defendants to claim a jury could not watch the fixed wing video as Mr. McKenzie is escorted casually by one arm and is seen actually entering the holding cell before he is pulled back and thrown to the floor, and reasonably find that Mr. McKenzie did not resist or attack the officers. And they do not address at all the allegation that the officers attacked him again after taking him off the wing or the testimony of Plaintiff or of other inmate witnesses. **Exhibit A, Deposition of Darryll McKenzie, p. 24-54, 74-106; Exhibit B, Declaration of Darryll McKenzie; Exhibit C, Declaration of Kevin Jones; Exhibit D, Declaration of Isaac Smith; Exhibit E, Inspector General's Report, Statement of Inmate Witnesses, p. 5-20.**

c. Defendants Ragans, Swift, Norris, Givens and Derringer claim they are entitled to summary judgment because they say they were not at the scene although Mr. McKenzie says they were. Mr. McKenzie did agree to drop Mr. Norris because he now believes he was misinformed as to the identity

of the officer he was told was Norris. As to the others, it is clear that officers moved around and even Defendants admit that some of the people present that day were not where the work roster said they were. **Exhibit A, Deposition of Darryll McKenzie, p. 157-58.**

d. Defendants state Plaintiff has not stated a retaliation claim. An inmate may state a cause of action for physical abuse as retaliation for filing grievances. The abuse of Mr. McKenzie occurred immediately after his declaration that he would grieve Sgt. Ford for his mistreatment in confinement. Sgt. Ford's behavior in stating "my word is God back here," and in removing Mr. McKenzie from his cell on a pretext and in jerking him from the holding cell when he was certainly no threat, as well as Capt. Roundtree's curses followed by a beating, supports a jury finding that the physical abuse of Mr. McKenzie was retaliation. **Exhibit A, Deposition of Darryll McKenzie, p. 76-78;.Exhibit B, Declaration of Darryll McKenzie.**

e. Defendants claim no deliberate indifference was shown as to Defendant Singer or Anderson. Plaintiff agreed to drop Defendant Anderson from the case. However as to Defendant Singer, he was made well aware of the numerous allegations of brutality against the officers who committed physical abuse of Mr. McKenzie. Documents reporting on these incidents, which were neither substantiated nor unsubstantiated, were routed to him for disposition. **Exhibit F, Deposition of Steven Singer, p. 11**.

f.  Defendants claim there is no failure to treat claim as to Defendant Singer. First of all, on the date of the incident complained of, plaintiff had a visible injury that required a physician's evaluation. No such evaluation was done and that fact would have been clear on the face of the Inspector General's Report and Use of Force Reports reviewed by Warden Singer. Medical issues are ultimately reviewable by the Warden. Not until the August 2009 evaluation by Dr. Lord at RMC did a physician evaluate Mr. McKenzie's neck injury. **Exhibit E, Inspector General and Use of Force Reports, p. 29-30; Exhibit G, Rule 33-602.210(20), Florida Rules of Administrative Procedure; Exhibit F, Deposition of Steven Singer, p. 26-27**.

**g.**  Defendants claim that Mr. McKenzie cannot recover compensatory or punitive damages because his injuries were not severe enough. Mr. McKenzie suffered a bleeding gash over his eye and an insult to his neck where he had previously had surgery that caused a "popping sound" that had not existed before. The injury caused Mr. McKenzie a great deal of pain and he has not yet received actual treatment. **Exhibit A, Deposition of Darryll McKenzie, p. 167; Exhibit B, Declaration of Darryll McKenzie; Exhibit C, Declaration of Kevin Jones.**

3.  For the above reasons, Defendants' Motion for Summary Judgment must be DENIED.

## PLAINTIFF'S STATEMENT OF FACTS

On October 20, 2008, Mr. McKenzie was housed in confinement at Columbia Correctional Institution in Lake City, Florida. For weeks, Plaintiff was denied changes of clothing. Plaintiff rinsed his clothing in the shower but had no way to dry it. The wet clothing caused the spread of mildew in the cell, adding to the unbearable smell of the clothing. On November 11, 2008, Mr. McKenzie and his roommate Shawn Bair could no longer endure the smell and Mr. McKenzie washed the only set of clothing he had and hung them on a light fixture to dry. Defendant Ford ordered the clothing removed and later, when he saw the clothing hanging on the bed, told Plaintiff he was going to give him a Disciplinary Report (DR). Plaintiff told Defendant Ford he would write him up (grieve Ford) as well. Defendant Ford replied, "I run confinement and my word is God back here." Sgt. Ford called Officer Moore to get McKenzie's cell mate Shawn Bair for a medical call-out. It was a holiday weekend and a medical call-out would be unlikely. Moreover, all medical callouts are published first thing in the morning and this was not on the list. Plaintiff suspected a pretext and that he was going to be beaten. Both inmates were cuffed and led out of the cell about 12:45 p.m. **Exhibit A, Deposition of Darryll McKenzie, p. 24-45; Exhibit B, Declaration of Darryll McKenzie; Exhibit D, Declaration of Isaac Smith**.

When McKenzie left the cell, Sgt. Ford entered and took all his clothing except the gray sweatshirt, which was still in Plaintiff's hands. Defendants Ford and Moore then escorted Plaintiff and his cell mate, Shawn Bair, to the showers at the end of the

corridor. As Plaintiff was entering the shower cell, as ordered, Sgt. Ford grabbed McKenzie and slammed him on the floor. Mr. McKenzie was sprayed with chemicals by Sgt. Ford. Plaintiff McKenzie was also beaten by Officer Moore. Defendant Captain Kenneth Roundtree came to the area and Mr. McKenzie and Mr. Bair tried to explain what happened.  Defendant Roundtree said, "Shut your goddamned mouth you son of a bitch." Mr. McKenzie informed Roundtree that he would grieve him as well. Defendant Roundtree then ordered Defendants Ford and Moore to move Plaintiff from the shower into the hallway out of the scope of the video cameras. **Exhibit A, Deposition of Darryll McKenzie, 43-45, 70-75, 80-86; Exhibit B, Declaration of Darryll McKenzie; Exhibit H, Fixed Wing Video Recording.**

While escorting Plaintiff off the wing, just outside the scope of the fixed wing cameras, Defendants Ford and Moore threw Plaintiff to the ground. The other officers punched and kicked him. Defendant Stevens punched Plaintiff in the forehead with his fist, causing blood to flow freely from a wound above his right eye. Plaintiff was then dragged into another room by Stephens, Roundtree, Ford, and Moore, all of whom punched or kicked Plaintiff. While this was going on, Defendant Officers Ragans, Swift, Derringer, and Givens, had the ability to intervene to prevent the violation of Plaintiff's rights but did not do so. After this beating, Plaintiff was escorted to Wing 3, a gash over his eye and blood dripping down his face. **Exhibit A, Deposition of Darryll McKenzie, p. 87-106; 139-150; Exhibit B, Declaration of Darryll McKenzie; Exhibit C, Declaration of Kevin Jones.**

After Plaintiff was moved to Wing 3 of H Dorm, the hand-held video camera was started. Plaintiff was permitted to shower and was given only boxer shorts. Plaintiff was then taken to the nurse's station and saw Nurse Heather Sherman. Plaintiff told Nurse Sherman he had recently had surgery and needed a doctor's exam to assess the effect of the beating.  Despite Plaintiff's request and despite the fact that he had a visible injury, Nurse Sherman ignored his request to see a doctor. Sherman merely took vital signs and put a bandage on the gash over Plaintiff's eye where Captain Stephens had struck him. Plaintiff was placed in a cell with no clothing but his boxers although the temperature in the unheated cell block was close to freezing.

The next day, November 12, 2008, Plaintiff again sought in vain to see a doctor. On November 13, 2008, a female officer brought Plaintiff a witness statement for the use of force incident.  Plaintiff said he needed his glasses and a pen.  The female officer wrote that he refused to make a statement and went away. After two days in the cell with nothing but his underclothes, a corrections officer on the midnight shift finally gave Plaintiff pants and a shirt. On November 14, 2008, Plaintiff was brought some of his property. Plaintiff's sheets and legal materials were wet with urine. After two more days in the cell, a corrections officer on the midnight shift said "enough is enough" and gave Plaintiff a change of clothing and ordered that he be brought clean bed linens. **Exhibit A, Deposition of Darryll McKenzie, p. 164-74**.

As a result of the attack, Mr. McKenzie suffered significant injuries to his head, mouth, neck, shoulders, back, and legs. Mr. McKenzie suffered pain and emotional

distress. The Defendants aggravated a prior injury to Mr. McKenzie's neck. A policy of ignoring, minimizing, and failing to document or treat injuries to inmates suffered as a result of uses of force by corrections officers as a way of protecting prison security officers from liability for excessive uses of force existed at Columbia Correctional Institution under Defendant Singer. This policy existed prior to the time Defendant Steven Singer became Warden of Columbia Correctional Institution but it was continued in force by Singer. Nine months later, Plaintiff saw a doctor about the injury to his neck, which was causing a "popping" sound. This condition was noted for observation but no treatment was ever offered other than a cervical collar.

**Exhibit I, Medical Records from Reception Medical Center.**

Defendant Singer was specifically aware of MINS reports that Defendants Stevens, Roundtree, Ford, and Moore, had been involved in multiple incidents of abuse of inmates prior to the incident sued upon but did nothing to prevent it.

**Exhibit F, Deposition of Steven Singer, p. 56**. Defendant Singer was also present when Defendant Roundtree, referring to the use of force incident, threatened Plaintiff. **Exhibit A, Deposition of Darryll McKenzie, p. 174**. Defendant Singer, knowing of the tradition of inmate abuse at Columbia C.I. failed to supervise or train corrections staff not to abuse inmates or to impress them that such behavior would not be tolerated. Plaintiff suffered bodily injury and resulting pain and suffering, disability, aggravation of an existing condition, humiliation, and mental anguish.

## MEMORANDUM OF LAW

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. The court should view the evidence and any inferences that may be drawn in the light most favorable to the non-movant. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158-159, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970). The party seeking judgment must first identify grounds that show absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Plaintiff responds to each of the grounds for dismissal as follows:

### A. "Heck-Barred First Use of Force Precludes Jurisdiction"

A *Heck v. Humphrey* issue is not a jurisdictional bar but rather a defense that is subject to waiver.[1] *Polzin v. Gage*, 636 F.3d 834, 837, 838 (7th Cir. 2011):

---

[1] Contrary to defendants' claim for an analogy, it is abundantly clear that neither does a failure to exhaust remedies void subject matter jurisdiction. 42 U.S.C. 1997e(2) states that if "a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim *without first requiring the exhaustion of administrative remedies.*" The U.S. Supreme Court emphasized that fact in *Woodford v. Ngo*, 548 U.S. 81 (2009), holding that "§ 1997e(c)(2) still serves a useful function by making it clear that *the PLRA exhaustion requirement is not jurisdictional*, and thus allowing a district court to dismiss plainly meritless claims without first addressing what may be a much more complex

Mr. Polzin maintains that the district court improperly ruled on the merits of his claims. In his view, the district court could not address his constitutional arguments on the merits because Heck required the court to dismiss his case without prejudice. The Heck doctrine is not a jurisdictional bar. . . Because it is not jurisdictional, the Heck defense is subject to waiver. . . We have implied, but never explicitly held in a published opinion, that district courts may bypass the question of whether Heck applies to decide a case on its merits. We now hold explicitly that district courts may bypass the impediment of the Heck doctrine and address the merits of the case.").

Regardless of that fact, however, no *Heck v. Humphrey* issue is raised in the instant case, as the Court ruled in Defendants Motion to Dismiss. The Defendants should not be trying to re-litigate this issue here.

A plaintiff may prevail on an excessive force claim without necessarily implying the invalidity of the underlying conviction for the offense giving rise to the excessive force. *See Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir.1996) ("Because a successful section 1983 action for excessive force would not necessarily imply the invalidity of Smithart's arrest or conviction [for assault with a deadly weapon during a traffic stop], *Heck* does not preclude Smithart's excessive force claim."). See also, e.g., *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir.2002) (defendant who pleaded guilty to offenses for which she was arrested avoided summary judgment on claim of excessive force in effecting the arrest). *See Wells v. Cramer*, 158 F. App'x. 203, 204 (11th Cir. 2005).

Although Defendants work hard to blur the difference between the language "necessarily imply the invalidity" of the conviction and "cast doubt on" the

---

question, namely, whether the prisoner did in fact properly exhaust available administrative remedies." *Id.* at 101.

disciplinary report. Disciplinary reports are not held to a very high standard of proof ("some evidence") and little can be said about the actual process that does not cast doubt on its results. However especially in cases of excessive force the use of a particular level of force can almost always be challenged without challenging the finding that a prisoner violated a rule prior to its exercise.

As the U.S. Supreme Court stated in *Heck v. Humphrey*, "[I]f the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit. *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S. Ct. 2364, 2372-73, 129 L. Ed. 2d 383 (1994). Here, if the Plaintiff's action does not negate the elements of the rule underlying the disciplinary report, it is not barred by *Heck*. For the Heck bar to apply, a plaintiff must negate "an element of the offense of which he has been convicted" in order to prevail in his civil action. *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). That is not to say that because the version of events told by the officer and the plaintiff differ, the suit is barred. Rather, the suit may proceed if, even under the plaintiff's version of events, the conviction "might still be valid." *Hughes* at 1161. As expressed by the Eleventh Circuit in *Dyer v. Lee*, "for Heck to apply, it must be the case that a successful § 1983 suit and the underlying conviction be logically contradictory." *Dyer v. Lee*, 488 F.3d 876, 884 (11th Cir. 2007). The Dyer court goes on to quote the Seventh Circuit:

> Were we to uphold the application of Heck in this case, it would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages. Put another way, police subduing a suspect could use as much force as they wanted-and be shielded from accountability under civil law-as long as the prosecutor could get the plaintiff convicted on a charge of resisting. This would open the door to undesirable behavior and gut a large share of the protections provided by § 1983.

*VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir.2006). The *Dyer* court continues, "*Heck* was not intended to be a shield to protect officers from § 1983 suits. It was intended to protect habeas corpus and promote finality and consistency. Provided those goals are met, a § 1983 suit is not barred by *Heck*." 488 F.3d at 884.

In *Harrell v. Goodman*, 4:06-cv-00362-RH-WCS, this Court declined to impose a *Heck* bar in constitutional excessive force litigation where the plaintiff was convicted of battery of a law enforcement officer, resisting an officer with violence, and fleeing and eluding. Id., p. 9. This Court held that the issue was not the averments of the officer or of the criminal information, but whether the elements of the offense were inconsistent with the success of the plaintiff's civil action (Doc. 23, Order on Summary Judgment, 03/09/07).

In the instant case, Plaintiff received disciplinary reports for violating rule 9-17, Disorderly Conduct, and Disobeying an Order. Although each of the reports resulted in punishment by loss of gain time, neither is punishable by being slammed on concrete, beaten, or being sprayed with chemicals, much less being housed for an extended time without clothing in frigid temperatures. Nor are any of those rule

violations inconsistent with the allegation that officers violated the Plaintiff's rights through the use of excessive force or failure to intervene in same.

At deposition, Plaintiff did state that the Disciplinary Reports that were written after the excessive force incident were, in fact, false. However his claim is not based on that fact but rather the fact that the force that was used was still excessive whether or not the Disciplinary Reports were true.

In *Curry v. Syracuse*, 316 F.3d 324 (2003), the court held:

> The district court appears in this statement to have accorded collateral estoppel effect not only to the ALJ's finding that Curry struck Lynch, but also to the ALJ's mention in the course of his decision that Curry "reached for something on his ankle, socks."  However, unlike the ALJ's finding that Curry struck Lynch, the ALJ's statement that Curry reached for his sock was not necessary to the outcome of the parole revocation hearing. Curry's parole could have been revoked because he struck Lynch, whether or not he reached for his sock. Thus, it would not be proper to accord preclusive effect to this aspect of the ALJ's decision."

Similarly here, the fact that events did not unfold as claimed by the officer in the report was not essential to Plaintiff's constitutional claim. The force that was used was not responsive to the behavior alleged in the Disciplinary Report but continued for a sustained period of time and was clearly a post-incident effort to "teach Plaintiff a lesson" because of his history of grievances against the officers. In any case, there were subsequent uses of force that were not responsive to any alleged wrongful acts by Plaintiff, which took place after Plaintiff was taken off the wing and which provide additional bases for the constitutional complaint.

### B.  "Plaintiff Hasn't Shown a Valid Excessive Force Claim"

Defendants' claim that Plaintiff hasn't shown a valid excessive force claim is based on *their* rendition of the facts, not his.  "As a 'threshold question,' a court must ask, '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  The basis cannot ride solely on the defendant's rendition of the facts.  The question remains whether or not "a constitutional right would have been violated under the plaintiff's version of the facts…" *Id.*

Furthermore, it is disingenuous for Defendants to claim a jury could not watch the fixed wing video as Mr. McKenzie is escorted casually by one arm and is seen actually entering the holding cell before he is pulled back and thrown to the floor, and reasonably find that Mr. McKenzie did not resist or attack the officers.  The video is not outside the realm of understanding for the average lay juror.  The Jury will be able to view the video and "determine the officer's intent in the incident.  Questions regarding the reasonableness, excessiveness, or wantonness of an officer's actions are matters left to the jury's determination" *Howell v. Houston County, Ga.*, 5:09-CV-402 CAR,  (M.D. Ga. Aug. 26, 2011).  Additionally, from this video they will be able to "decide whether the officers acted in a good faith attempt to restore order or with a malicious and sadistic intent to cause harm" *Id.*

Defendants also contend that because "no constitutional violation occurred" they are entitled to qualified immunity. This misconstrues the meaning of the term. As this Court's Order on Defendants' Motion to Dismiss makes clear,

Qualified immunity applies to damages claims against public officials and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). *See generally Hope v. Pelzer*, 536 U.S. 730 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Thus an official may be held individually liable only if the official's conduct violates clearly established law. That standard is easily satisfied here: the law has long been clear that a supervisor can be held liable for maintaining a practice under which inmates are beaten or sprayed for no legitimate reason, and for keeping in place officers who have repeatedly done it.

Doc. 37, p. 10-11.

## C. "Ragans, Swift, Norris, Givens and Derringer Were Not There"

Defendants Ragans, Swift, Norris, Givens and Derringer claim that they are entitled to summary judgment because they say they were not at the scene although Mr. McKenzie says they were. Mr. McKenzie did agree to drop Mr. Norris because he now believes he was misinformed as to the identity of the officer he was told was Norris. As to the others, it is clear that officers moved around and even Defendants admit that some of the people present that day were not where the work roster said they were. Defendant Kenneth Roundtree discusses how officers are moved around the compound based on need. He also specified that if officer is assigned on short notice he may not appear on log. **Exhibit J, Deposition of Kenneth Roundtree, p. 21**. Similarly, Defendant Jason Stephens talks about secondary duties and their place on the roster. He states that if secondary duties do not last 30 minutes, they do not go on the log. **Exhibit K, Deposition of Jason Stephens, p. 28**. The Use of Force Paperwork shows that Scott Burleson, the cameraman who carried the hand-held camera on Plaintiff, and Scott Teston, both present, were not assigned to Dorm H.

**Exhibit E, Inspector General and Use of Force Report, p. 33-34; Exhibit L,**

**Employee Roster.**

Defendants also argue for summary judgment because they had no authority to order their superior officers to do—or not to do—anything. Defendants rely on *Keating v. City of Miami*, 598 F.3d 753, 765 (11th Cir. 2010). In *Keating*, Miami Police Major Adam Burden was present when their subordinate officers "herded" demonstrators out of the demonstration area in violation of their first amendment rights. The court there found Burden not liable on a failure to intervene claim because the "herding" had been set in motion by officers still higher in rank than Burden and he had no authority to countermand their orders. Burden had been singled out because he was a superior officer and because he was present. *Id*.

Even to the extent that this defense may obtain in the Eleventh Circuit, these facts do not justify it. Unlike the case in *Keating*, the officers here were not simply bystanders. They were clearly part of the savage use of force and encouraged it with taunts and jeers through the various stages of abuse and prolonged the abuse by failing to report it. And co-equal officers do not act to intervene to prevent a constitutional abuse on the basis of "authority." One correctional officer may not have any authority to tell another what to do but must still intervene to prevent the abuse, if able, or be guilty of abuse as well.

### D. "Plaintiff Has Not Stated a Retaliation Claim"

An inmate may maintain a cause of action for retaliation under 42 U.S.C. §
1983 by showing that a prison official's actions were "the result of [the inmate's]
having filed a grievance concerning the conditions of his imprisonment." *Farrow v.*
*West*, 320 F.3d 1235, 1248 (11th Cir. 2003). To establish a First Amendment
retaliation claim, a prisoner need not allege the violation of an additional separate and
distinct constitutional right; instead, the core of the claim is that the prisoner is being
retaliated against for exercising his right to free speech. *Id.* To prevail on a retaliation
claim, the inmate must establish that: "(1) his speech was constitutionally protected;
(2) the inmate suffered adverse action such that the [official's] allegedly retaliatory
conduct would likely deter a person of ordinary firmness from engaging in such
speech; and (3) there is a causal relationship between the retaliatory action [the
disciplinary punishment] and the protected speech [the grievance]." *Smith v. Mosley*,
532 F.3d 1270, 1276 (11th Cir. 2008).

Here, Mr. McKenzie was taken from his cell on a pretext after stating that he
intended to file a grievance against Sgt. Ford. Mr. McKenzie was escorted to a holding
cell and was actually inside the cell when Sgt. Ford yanked him out of the cell and
threw him on the floor. He was subsequently beaten and sprayed without a valid
penological purpose. When he tried to explain matters to Captain Roundtree,
Roundtree replied, "Shut your goddamned mouth you son of a bitch." Roundtree
ordered Mr. McKenzie taken from the holding cell without a camera and later
participated in beating and kicking Mr. McKenzie. Sgt. Ford yelled that, "My word is

God back here." All the officers who physically abused Mr. McKenzie had expressed

their hatred and contempt for him as a "writ writer," a pejorative term.[2]

### E. "No Deliberate Indifference Shown as to Singer or Anderson"

Defendants claim no deliberate indifference was shown as to Defendant Singer

or Anderson. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court set out

elements that must be shown to establish an Eighth Amendment violation.

"Deliberate indifference" may be shown through circumstantial evidence. *Id.* at 842.

An administrator such as Defendant Singer may be found liable, "when there is a

causal connection between actions of the… official and the alleged constitutional

deprivation.  *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir.1988).

In *Farmer*, a case involving a prisoner who claimed that prison officials showed

"deliberate indifference" in violation of the Eighth Amendment by placing him at risk

among the general prison population, the Supreme Court stated that [w]hether a

prison official had the requisite knowledge of a substantial risk is a question of fact

---

[2] **Exhibit F, Deposition of Warden Steven Singer, p. 28-29:**
  Q. Okay. And have you heard the term writ writers?
  A. Absolutely.
  Q. Somebody who files a lot of grievances is known as a writ writer?
  A. Absolutely. Yes, sir.
  Q. Not a fond term?
  A. Well, they have the right. They have to right to grieve. . . . So, but what happens with writ
  writers is the reason why folks are not all that fond of them is because their intent is to punish the
  staff --
  Q. Mm-hmm.
  A. -- by putting them to work, making allegations that are unfounded and so forth and I'm not
  saying that all of them are unfounded either, okay?

subject to demonstration in the usual ways, including inference from circumstantial evidence and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id.*

According to *Matthews v. Crosby*, 480 F.3d 1265 (11th Cir. 2007), a causal connection can be established by a "history of widespread abuse" and the administrator is "put on notice of the need to correct the alleged deprivation" *Id.* at 1270. The court in *Mathews* found that things such as inmate reports, grievances, and other factors that come to the warden for review constitute notice "of the need to correct [an] alleged deprivation" of rights *Id.* Courts have found that "[a] causal connection" may be established if there are facts that "support an inference" that the administrator had knowledge that the "subordinates would act unlawfully and failed to stop them from doing so" *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003).

Plaintiff agreed to drop Defendant Anderson from the case. But Defendant Singer was well aware of numerous allegations of brutality against Officers Roundtree, Stephens, Ford, and Moore. Numerous MINS (Management Information Notification System) reports alleging misconduct by those officers, **See Exhibit M, MINS Reports**, served as notice to Defendant Singer. Defendant Singer noted: "I see every MINS on my computer every day that goes out and I see every disposition that comes back from the IG's case, what they think about it." **Exhibit F, Deposition of Defendant Steven Singer, p. 56**. See *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). In this case, the MINS documents did not rule out the validity of

the allegations. Yet the subject of most of these misconduct reports, Defendant Roundtree, was actually promoted from Sergeant to Captain during Defendant Singer's tenure as Warden at Columbia C.I. If more were needed, Warden Singer was present days after the incident when Capt. Roundtree threatened Mr. McKenzie in referring to the incident. **Exhibit A, Deposition of Darryll McKenzie, p. 174.**

While prison officials cannot be held liable based on constructive notice, they are not free to ignore obvious dangers to inmates. *Farmer v. Brennan*, 511 U.S. at 826. Circumstantial evidence may be enough to prove liability. A prisoner need not show that an official failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Id.* at 842. A professed failure to draw an inference of risk of harm may be disbelieved by a jury and a factfinder "may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

Defendants once again, as in Section B, make a claim for Qualified Immunity. In *Fennell v. Gilstrap*, 559 F.3d 1212 (11th Cir. 2009), the Eleventh Circuit held that once a plaintiff makes a factual case for an excessive force violation, he need not go on to show the right violated was "clearly established. Specifically, this Court held:

> The qualified immunity inquiry usually involves two prongs. First, a plaintiff must show that a constitutional or statutory right has been violated. Second, a plaintiff must show that the right violated was clearly established. *Danley v. Allen*, 540 F.3d 1298, 1306 (11th Cir.2008) (citations omitted). For claims of excessive force in violation of the Eighth or Fourteenth Amendments, however, a plaintiff can overcome a defense of qualified immunity by showing only the first prong, that his Eighth or Fourteenth *1217 Amendment rights

have been violated. *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir.2002).
We created this rule because, for an excessive-force violation of the Eighth or
Fourteenth Amendments, "the subjective element required to establish it is so
extreme that every conceivable set of circumstances in which this constitutional
violation occurs is clearly established to be a violation of the Constitution...."
*Id.* See also *Danley*, 540 F.3d at 1310 (conducting qualified immunity analysis for
alleged Fourteenth Amendment violation by examining solely the first prong).

*Fennell* at 1216-17.

### F.  "No Failure to Treat Claim as to Defendant Singer"

Defendant Singer, as Warden of Columbia Correctional Institution, had the

power of review over the medical program if it failed to address the needs of the

inmates. As Defendant Singer stated in his deposition:

Q. Okay. And then the formal, the first formal grievance comes to you?

A. (Witness nodding head.)

Q. And then, of course, it goes to the Secretary after that.

A. But medical issues have priority and if it's a grievance of gain time,
discipline, medical, then they can file a formal as a first step.

Q. Mm-hmm. But now what do you do as Warden when you get a grievance,
you think it's a fair grievance, but it involves medical issues including medical
expenditures, how do you do that? Are you locked into your area or can you
--

A. I'm not locked in.

Q. Okay.

A. I'm responsible for every inmate and every staff member here.

Q. Okay.

A. And if something is brought to my attention that an inmate needs, then, and
is not getting, then I will try to intercede. I'll find out why they are not
getting it and it's usually a physician will say that, the chief health officer will

say he really doesn't need it. His condition doesn't warrant it. He's not giving you a true depiction of his condition. Similarly we have mother's complaining that my son is not getting medical needs or my husband is not getting their medical needs met and we evaluate that and respond back in writing what we found.

Q. But in the other case where despite what the health officer tells you you perceive that this is a real need that's not being met, how do you deal with that?

A. I tell them to do it.

Q. Okay. So you can tell the --

A. Absolutely.

Q. -- medical officer?

A. Absolutely. He works, the chief health officer works, I'm his supervisor.

**Exhibit F, Deposition of Steven Singer, p. 26-27.**

According to Section 33-602.210(20), Florida Administrative Code, "noticeable physical injuries" must be examined by a physician. The Section reads::

Any noticeable physical injury shall be examined by a physician and the physician shall prepare a report documenting the extent of the injury and the treatment prescribed. Such report shall be completed within 1 working day of the incident and shall be submitted to the warden for initial review.

Plaintiff had a noticeable physical injury – i.e., a gash above his eye. Yet there is no indication in the use of force records that he ever saw a physician about it and Warden Singer was required to review the paperwork and would have seen on its face that the rule was violated. **Exhibit E, Inspector General and Use of Force Report p. 29-30; Exhibit G, Section 33-602.210(20), Florida Administrative Code (2008).**

**G. "Plaintiff Cannot Recover Compensatory or Punitive Damages"**

Defendants allege that an inmate being slammed on the ground and sustaining a gash above his eye is *de minimis* and not a cognizable injury under 42 U.S.C. 1997e(e).

Though section 1997e(e) does not define physical injury, courts have concluded that "the physical injury must be more than de minimis, but need not be significant." *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir.1999), *vacated, in part, on other grounds*, 216 F.3d 970 (11th Cir.2000) (en banc ). *Johnson v. Breeden*, 280 F.3d 1308, 1312, 1321 (11th Cir.2002) (a head injury that caused swelling and seizure, along with lacerations and contusions, constituted more than de minimis injury).

In *Wilkins v. Gaddy*, the U.S. Supreme Court rejected the idea that "significant injury" is a threshold requirement for an excessive force claim. The Court found that:

> The "core judicial inquiry," was not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 7, 112 S.Ct. 995; see also Whitley v. Albers, 475 U.S. 312, 319-321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Hudson, 503 U.S. at 9, 112 S.Ct. 995; see also id., at 13-14, 112 S.Ct. 995 (Blackmun, J., concurring in judgment) ("The Court today appropriately puts to rest a seriously misguided view that pain inflicted by an excessive use of force is actionable under the Eighth Amendment only when coupled with 'significant injury,' e.g., injury that requires medical attention or leaves permanent marks").

*Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010).

Here, Plaintiff suffered a gash above his eye which bled freely according to Plaintiff and at least one witness. He also had a change to his neck where he had had surgery which resulted in a "popping" sound as he turned his neck which was deemed worthy at least of "observation" by Dr. Lord at RMC.

Based on the above argument and citations to authority, Plaintiff requests that the Defendants Motion for Summary Judgment be DENIED.

Respectfully Submitted,

s/James V. Cook
JAMES V. COOK, ESQ.
Florida Bar Number 0966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, Florida 32301
(850) 222-8080; 561-0836 fax
cookjv@nettally.com

I CERTIFY the foregoing was filed electronically on 2/17/12 and that the person noted below is registered to be notified by the CM/ECF electronic mail system:

Lance Eric Neff
Office of the Attorney General
The Capitol, PL 01
Tallahassee, FL 32399-1050
Lance.neff@myfloridalegal.com

Mark Hiers
Office of the Attorney General
The Capitol, PL 01
Tallahassee, FL 32399-1050
Mark.Hiers@myfloridalegal.com

Ginger Barry Boyd
Broad and Cassel
200 Grand Boulevard, Suite 205A
Destin, Florida 32550
gbarry@broadandcassell.com

s/James Cook
JAMES V. COOK