UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DARRYLL McKENZIE,
    Plaintiff,

v.

WALTER McNEIL, et al.,
    Defendants.

Case No. 4:11-cv-45-RH-WCS

## PLAINTIFF'S TRIAL BRIEF

Plaintiff, DARRYLL McKENZIE, by and through his undersigned attorney, files the following Trial Brief in the above-styled case:

### Introduction:

This is not just a case about a series of beatings. Darryll McKenzie, a prison whistleblower, had angered corrections officers by speaking out about abuses and unfair and unlawful treatment in prison. He had been denied clean clothes for weeks prior to the incident that resulted in his physical injury by corrections officers. After his injury he was kept in his boxer shorts during some nights when the temperature fell into the 30's. When he finally got bedding it was wet and smelled of urine.

Sgt. Timothy Ford was the Dorm Officer. He liked to say "My word is God back here." He knew well that Darryll McKenzie was getting sick from filthy clothing and he wanted that. He knew Darryll McKenzie was freezing in his cell after the beatings and he wanted that too. He could have changed those conditions anytime.

1

Captain Roundtree and Captain Stephens were also aware of the conditions under which Darryll McKenzie suffered both before and after the beatings that McKenzie received, beatings that they participated in. Both of them, but especially Capt. Roundtree, were notorious in the prison for their violence and cruelty. Warden Singer was present when Capt. Roundtree told Mr. McKenzie afterwards, "I could have killed you." Warden Singer said nothing to McKenzie but, "You can go."

## Facts to Be Proven at Trial

On October 20, 2008, Mr. McKenzie was housed in confinement at Columbia Correctional Institution in Lake City, Florida. For weeks, he was denied a change of clothing. Plaintiff rinsed his clothing in the shower but had no way to dry it. The wet clothing caused the spread of mildew in the cell, adding to the unbearable smell of the clothing. On November 11, 2008, Mr. McKenzie and his roommate Shawn Bair could no longer endure the smell and Mr. McKenzie washed the only set of clothing he had and hung them on a light fixture to dry. Defendant Ford ordered the clothing removed and later, when he saw the clothing hanging on the bed, told Plaintiff he was going to give him a Disciplinary Report (DR). Plaintiff told Defendant Ford he would write him up (grieve Ford) as well. Defendant Ford replied, "I run confinement and my word is God back here." Sgt. Ford called Officer Moore to get McKenzie's cell mate Shawn Bair for a medical call-out. It was a holiday weekend and a medical call-out would be unlikely. Moreover, all medical callouts are published first thing in the

morning and this was not on the list. Plaintiff suspected a pretext and that he was going to be beaten. Both inmates were cuffed and led out of the cell about 12:45 p.m.

When McKenzie left the cell, Sgt. Ford entered and took all his clothing except the gray sweatshirt, which was still in Mr. McKenzie's hands. Defendants Ford and Moore then escorted Plaintiff and his cell mate, Shawn Bair, to the showers at the end of the hall. As Plaintiff was entering the shower cell, as ordered, Sgt. Ford grabbed McKenzie and slammed him on the floor. Mr. McKenzie was sprayed with chemicals by Sgt. Ford. Plaintiff McKenzie was also beaten. Defendant Captain Kenneth Roundtree came to the area and Mr. McKenzie and Mr. Bair tried to explain what happened. Defendant Roundtree said, "Shut your goddamned mouth you son of a bitch." Mr. McKenzie informed Roundtree that he would grieve him as well. Defendant Roundtree then ordered Defendants Ford and Moore to move Plaintiff from the shower into the hallway out of the scope of the video cameras. A hand-held camera had been sent for but Capt. Roundtree did not wait.

Inmate witnesses, including Isaac Smith, saw the initial interchange between Sgt. Ford and Mr. McKenzie. They heard Sgt. Ford say that Shawn Bair had a medical call-out. They saw Sgt. Ford and Officer Moore take the two inmates down the hall. And they saw Mr. McKenzie enter the shower cell and get pulled out again.

While escorting Plaintiff off the wing, just outside the scope of the fixed wing cameras, Defendants Ford and Moore threw Plaintiff to the ground. The other officers punched and kicked him. Plaintiff was then dragged into another room by

3

Stephens, Roundtree, Ford, and Moore, all of whom punched or kicked Plaintiff. Defendant Stevens punched Plaintiff in the forehead with his fist, causing blood to flow freely from a wound above his right eye. While this was going on, Defendant Officers Ragans, Swift, Derringer, and Givens, witnessed the misconduct, had the ability to intervene to prevent the violation of Plaintiff's rights either then or shortly thereafter by writing required reports but did not do so. After this beating, Plaintiff was escorted to Wing 3, a gash over his eye and blood dripping down his face.

    Kevin Jones, an inmate in a holding cell on the other side of the control room, where they took Mr. McKenzie, saw still another beating outside a row of offices that included the nurse's office, where they then took Mr. McKenzie. He saw officers beating McKenzie in the hall and then saw them take him into one of the officers and heard them shouting and beating him. He saw them take Mr. McKenzie back out of the officer with a gash over his eye and blood dripping down.

    After Plaintiff was moved to Wing 3 of H Dorm, the hand-held video camera was started. Plaintiff was permitted to shower and was given only boxer shorts. Plaintiff was then taken to the nurse's station and saw Nurse Heather Sherman. Plaintiff told Nurse Sherman he had recently had surgery and needed a doctor's exam to assess the effect of the beating. Despite Plaintiff's request and despite the fact that he had a visible injury, Nurse Sherman ignored his request to see a doctor. Sherman merely took vital signs and put a bandage on the gash over Plaintiff's eye where

Captain Stephens had struck him. Department of Corrections rules require an inmate to be seen by a doctor when he has a visible injury.

Plaintiff was placed in a cell with no clothing but his boxers although the temperature in the unheated cell block was close to freezing at night. The next day, November 12, 2008, Plaintiff again sought in vain to see a doctor. On November 13, 2008, a female officer brought Plaintiff a witness statement for the use of force incident. Plaintiff said he needed his glasses and a pen. The female officer wrote that he refused to make a statement and went away. After two days in the cell with nothing but his underclothes, a corrections officer on the midnight shift finally gave Plaintiff pants and a shirt. On November 14, 2008, Plaintiff was brought some of his property. Plaintiff's sheets and legal materials were wet with urine. After two more days in the cell, a corrections officer on the midnight shift said "enough is enough" and gave Plaintiff a change of clothing and ordered that he be brought clean bed linens.

As a result of the attack, Mr. McKenzie suffered significant injuries to his head, mouth, neck, shoulders, back, and legs. Mr. McKenzie suffered pain and emotional distress. The Defendants aggravated a prior injury to Mr. McKenzie's neck on which he had previously had an operation to fuse disks.

Warden Singer maintained a policy of ignoring, minimizing, and failing to document or treat injuries to inmates suffered as a result of uses of force by corrections officers as a way of protecting prison security officers from liability for excessive uses of force at Columbia Correctional Institution. This policy existed prior

to the time Defendant Steven Singer became Warden of Columbia Correctional Institution but it was continued in force by Singer. Nine months later, Plaintiff was actually examined by a doctor, Dr. Michael Lord at the Reception Medical Center, about the injury to his neck, which was causing a "popping" sound. This condition was noted for observation but no treatment was ever offered other than a cervical collar. No therapy or treatment was offered to Mr. McKenzie.

Defendant Singer was specifically aware of MINS reports that Defendants Stevens, Roundtree, Ford, and Moore, had been involved in multiple incidents of abuse of inmates prior to the incident sued upon but did nothing to prevent it. Defendant Singer was also present when Defendant Roundtree, referring to the use of force incident, threatened Plaintiff. Defendant Singer, knowing of the tradition of inmate abuse at Columbia C.I. failed to supervise or train corrections staff not to abuse inmates or to impress them that such behavior would not be tolerated. Plaintiff suffered bodily injury and resulting pain and suffering, disability, aggravation of an existing condition, humiliation, and mental anguish.

### A. The Evidence

There are two fixed wing video recordings and one hand-held video recording. The fixed wing recordings are grainy and jerky but show the escort of Darryll McKenzie and Shawn Bair from the vicinity of their cell to the shower cells that were used as holding cells at the far end of the corridor, the end closest to the control room. The escort, which ends with Darryll McKenzie being snatched back out of the shower

cell he has already entered and thrown on the floor, is recorded from cameras at each end of the hall. The camera then shows Capt. Roundtree walking onto the wing. It shows Capt. Roundtree having an argument with Shawn Bair and then Sgt. Ford spraying Shawn Bair with chemicals. It shows Darryll McKenzie being taken off the wing, supposedly to go to a shower cell in Wing 3. However if Wing 3 was their destination, they would have gone left. But they go right.[1] Inmates in their cells on Wing 2 are able to see Mr. McKenzie beaten again once he is just out of range of the cameras. The officers in the control room, which is in the center of all this activity, would have been able to see all the uses of force against Darryll McKenzie.

The hand-held video was not started until about 13 minutes after Darryll McKenzie is led off the wing. The hand-held video shows Mr. McKenzie showering and being given only a pair of boxer shorts. The sweater that he had in his hand in the fixed wing camera is missing. He is escorted in only boxer shorts to the nursing station. It is hard to hear what goes on but it is clear that Mr. McKenzie is not happy about his medical treatment. Mr. McKenzie will explain that he was asking to see a doctor and being denied. Capt. Stephens becomes upset and asks Mr. McKenzie if he is "refusing" medical treatment. Capt. Stephens starts to take him out. Mr. McKenzie then accepts

---

[1] Capt. Roundtree, later, in discovery, adjusts his testimony to explain this anomaly, stating that Darryll McKenzie himself caused this route deviation by pulling to the right so that the officers had to leave him in a holding cell outside Wing 3, a detail that is missing from any of the reports of the incident. On the video it is clear Mr. McKenzie is not pulling away.

the treatment that is being offered – a bandage for the gash on his forehead.[2] He is taken to his cell still in his boxer shorts by Capt. Stephens and that is how Stephens leaves him. The temperature will go down to 37 degrees that night and the temperature on the wing will be about the same. He will not receive clothing for several days. When he finally receives bedding, it will be wet and smell of urine.

### B. Failure to Intervene

The officers in and around the control room had a complete view of all the activity in all three wings, 1, 2, and 3, as well as the corridor of the periphery of the control room where Darryl McKenzie was beaten twice and taken into a room and beaten yet again. Their failure to intervene does not simply consist in their failure to order officers – including, admittedly, senior officers – to cease and desist in their constitutionally abusive behavior, but in their failure to write required incident reports that would presumably have forced administrative attention on Mr. McKenzie and saved him from further retaliation, secured him medical treatment for his visible injury and brought him clean, warm clothing in his cell in confinement in Wing 3.

### C. Excessive Force

Mr. McKenzie was physically abused on camera outside the shower/holding cell at the opposite end of the corridor from his cell. He was clearly going into the cell, physically inside it when Sgt. Ford, who could then have closed the door if he feared

---

[2] Department rules state Mr. McKenzie is supposed to see a doctor if he has a visible injury.

Mr. McKenzie, is seen yanking him back out and onto the floor. Inmates will describe Mr. McKenzie being beaten again just off the scope of the cameras in the corridor around the central control room, beaten again outside the offices on the far side of the control room from Wing 2, and again inside one of the offices.. Not only was Mr. McKenzie a victim of an Eighth Amendment violation, but a reasonable jury could conclude that the physical abuse was an effort to retaliate against Mr. McKenzie for his exercise of free speech as a "writ writer" and create a sense of fear and despair that would make a lasting mark on Mr. McKenzie.

### D. Cognizable Injury

There are two kinds of injuries in this case. One is the physical injury, the gash over Mr. McKenzie's eye. The other is the weeks of going without clean clothing prior to the violent incident and being placed in a cell without clothing (other than boxers) over cold nights. Both kinds of injuries were in retaliation for Mr. McKenzie's exercise of free speech in criticizing inhumane conditions and unfairness in the prison.

The physical injuries, including a gash to Mr. McKenzie's forehead and trauma that caused a "popping sound" when he moved his neck, and trauma to his tongue (which does later receive treatment), constitute cognizable injury under 42 U.S.C. 1997e(e). Though section 1997e(e) does not define physical injury, courts have concluded that "the physical injury must be more than *de minimis*, but need not be significant." *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir.1999), vacated, in part, on other grounds, 216 F.3d 970 (11th Cir.2000) (en banc ). *Johnson v. Breeden*, 280 F.3d

9

1308, 1312, 1321 (11th Cir.2002) (a head injury that caused swelling and seizure, along with lacerations and contusions, constituted more than *de minimis* injury). In *Wilkins v. Gaddy*, the U.S. Supreme Court rejected the idea that "significant injury" is a threshold requirement for an excessive force claim. The Court found that:

> The "core judicial inquiry," was not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 7, 112 S.Ct. 995; see also Whitley v. Albers, 475 U.S. 312, 319-321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Hudson, 503 U.S. at 9, 112 S.Ct. 995; see also id., at 13-14, 112 S.Ct. 995 (Blackmun, J., concurring in judgment) ("The Court today appropriately puts to rest a seriously misguided view that pain inflicted by an excessive use of force is actionable under the Eighth Amendment only when coupled with 'significant injury,' e.g., injury that requires medical attention or leaves permanent marks").

*Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010).

### E. Qualified Immunity

Qualified immunity, once called "good faith" immunity, is intended to ensure that before an official is subjected to a lawsuit, that official is on notice that the alleged conduct is unlawful. *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 153 (2002).

However the U.S. Supreme Court in *United States v. Lanier*, 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432, makes clear officials may be on notice that their actions violate the law even in novel factual situations. The Court clearly rejected a requirement that previous cases be "fundamentally similar." The question is simply

whether the state of the law gave the official warning that the actions were unconstitutional. *Hope v. Pelzer*, 536 U.S. at 731.

In *Vinyard v. Wilson*, the Eleventh Circuit suggested that there are three kinds of cases that differently address issues of qualified immunity. The first kind of cases will be those that are specific enough to establish clearly the law applicable to particular conduct and circumstances with "obvious clarity" and to overcome qualified immunity, even in the total absence of case law. *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002). The next kind of case will be reviewable based on "broad statements of principle" which, again, with "obvious clarity," govern the subject matter of the lawsuit without being tied to particularized facts. *Id.* at 1351. The third type of case is that which does depend on particularized facts, and in those cases, a court will seek to determine whether the particularized facts of the case at bar can be "fairly distinguished" from the precedent such that qualified immunity may apply. This case certainly belongs in the "obvious clarity" category of cases.

### F. Deliberate Indifference

"Deliberate indifference" may be shown through circumstantial evidence. See *Farmer v. Brennan*, 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In *Farmer*, a case involving a prisoner who claimed that prison officials showed "deliberate indifference" in violation of the Eighth Amendment by placing him at risk among the general prison population, the Supreme Court stated that [w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to

11

demonstration in the usual ways, including inference from circumstantial evidence and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id.* There is no longer a "heightened pleading standard" in the Eleventh Circuit as it relates to cases governed by Rule 8(a)(2), including civil rights complaints since *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),. *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).

While prison officials cannot be held liable based on constructive notice, they are not free to ignore obvious dangers to inmates. *Farmer v. Brennan*, 511 U.S. at 826. Circumstantial evidence may be enough to prove liability. A prisoner need not show that an official failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Id.* at 842.

Warden Singer was on notice that the officers involved in the abuse of Darryll McKenzie were implicated in multiple incidents of inappropriate force and threats. Capt. Roundtree, in fact, was the subject of a huge number of such incidents. These were not incidents that were resolved in the officers' favor but essentially left undetermined. In some cases, they were returned to Warden Singer in MINS reports as "management issues." He read the reports. There is no evidence that he did anything to follow up on the reports in his "management" role.

### G. Distractions

Defendants will try to distract the Jury from the issues in this case. They will seek to find a way to suggest to the Jury that Mr. McKenzie had a homosexual relationship with one or more of his cellmates. Counsel for Defendants was very interested in his deposition of Mr. McKenzie in knowing whether Mr. McKenzie's cell mate at the time of the incident complained of was homosexual.

When they run out of bad things to say about Mr. McKenzie personally, they will bring corrections staff at all levels to say, "prisoners do this" and "prisoners do that." They will say that prisoners are manipulative. They will say prisoners exaggerate, prisoners lie. Prisoners are just looking for a chance to physically attack corrections officers. Prisoners are violent. Prisoners all keep contraband. The Court should strongly warn Defendants' counsel to instruct their witnesses to curb their generalizations and innuendo. We, on the other hand, do not claim that corrections officers are all violent and cruel. It happens that the officers at the center of this case are very violent.

**H. Damages**

Mr. McKenzie suffered an actual physical injury that was more than de minimis, a bleeding gash over his eye. He suffered physical pain, mental distress, feelings of rage and hopelessness, humiliation, depression and anxiety. In addition to damages based on physical pain and suffering, under the law a § 1983 plaintiff also may be awarded compensatory damages based on demonstrated mental and emotional distress, impairment of reputation, and personal humiliation. *Slicker v. Jackson*, 215 F.3d 1225, 1231 (11th Cir. 2000), *citing Carey v. Piphus*, 98 S.Ct. 1042, 1052 (1978); *Memphis*

*Community School District v. Stachura*, 477 U.S. 299, 307, 106 S.Ct. 2537, 2543. *See also, Wright v. Sheppard*, 919 F.2d 665, 669 (11th Cir. 1990) (holding humiliation, emotional distress, and mental anguish and suffering are all within the ambit of § 1983 compensatory damages); *O'Neill v. Krzeminski*, 839 F.2d 9, 13 (2d Cir.1988)(holding that § 1983 plaintiff alleging excessive force by a law enforcement officer was entitled to full compensation for his emotional pain).

Respectfully Submitted,

*s/James Cook*
JAMES V. COOK
Florida Bar Number 0966843
314 West Jefferson Street
Tallahassee, Florida 32301
(850) 222-8080; 561-0836 fax
cookjv@nettally.com

I CERTIFY the foregoing was filed electronically on 02/22/2012, and that the person noted below is registered to be notified by the CM/ECF electronic mail system:

Lance Eric Neff, Mark Hiers
Office of the Attorney General
The Capitol, PL 01
Tallahassee, FL 32399-1050
Lance.neff@myfloridalegal.com

Ginger Barry Boyd
Broad and Cassel
200 Grand Boulevard, Suite 205A
Destin, Florida 32550
gbarry@broadandcassell.com

*s/James Cook*