UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**DARRYLL JOEL McKENZIE,**

    **Plaintiff,**

v.                                  Case No.: 4:11-CV-45-RH-WCS

**WALTER MCNEIL, et al.,**

    **Defendants.**

_____/

## DEFENDANTS' TRIAL BRIEF[1]

Defendants, through counsel, submit the following trial brief on the legal issues in this case.

### Preliminary Statement

Plaintiff alleges the following: Plaintiff Darryl Joel McKenzie was an inmate at Columbia Correctional Institution. He seeks damages (compensatory damages, punitive damages, and attorney's fees) against nine defendants: Warden Steven Singer and eight correctional officers. In his amended complaint, Plaintiff alleges that on November 11, 2008, two uses of force were employed against him. In the first use of force, he was slammed to the ground and had chemical agents used on him. This use of force occurred near and in a shower cell. A second series of alleged uses of force (near a yellow pole and in a room off the hallway) occurred shortly after the first as Plaintiff was in a hallway being transferred to another cell. Plaintiff claims that this excessive use of force was carried out by Defendants Ford, Moore,

---

[1] The undersigned apologizes for the untimeliness of this filing and asks the Court to accept it as timely filed. The due dates were unfortunately not calendared by the undersigned, his co-counsel, or either of our legal assistants. The undersigned was not aware that this filing was due until he saw that the opposing counsel had filed his.

1

Stephens, and Roundtree. Plaintiff alleges the other four officers witnessed the excessive use of force and could have stopped it but did not. Plaintiff alleges that all of this was done for no legitimate reason but only to retaliate against him for being a writ writer and filing grievances.

Plaintiff alleges that the warden was aware of the practice of retaliating against writ writers and knew of multiple instances when these same four officers used excessive force against inmates. Plaintiff has sued the warden only in his "supervisory capacity." He does not allege that he participated in or was even aware of this excessive use of force as it was occurring. Plaintiff also originally sued the Secretary of the Department of Corrections, Assistant Warden Tony Anderson, and Officer Norris, but Plaintiff voluntarily dismissed his claims against these individuals.

Defendants allege the following:

*1.    First use of force outside the shower cell.*

On November 11, 2008, while performing duties in wing two of H-dorm at Columbia C.I., Officer Moore noticed clothing hanging up in the cell of Plaintiff and his cellmate, Shawn Bair. Officer Moore instructed the inmates to remove the clothing several times.[2] Officer Moore also informed his supervisor, Sergeant Ford, of the situation. Sergeant Ford instructed the inmates to remove the clothing. Because the clothing was blocking full view of the cell, both officers became suspicious of what the inmates were doing in the cell and decided to perform a cell search. Plaintiff and inmate Bair were escorted to shower cells on the same wing so that a cell search could be performed.

Mr. Bair was placed in a shower cell without incident. After Mr. Bair was placed in a shower cell by Officer Moore, Sergeant Ford then attempted to place Plaintiff in a separate

---

[2] The rules of confinement do not allow the hanging of clothes in a cell. Plaintiff acknowledged this rule during his deposition.

shower cell.  Plaintiff became disorderly and suddenly attempted to snatch away from Sergeant Ford.  Upon quickly giving Mr. McKenzie several orders to cease his actions to which Plaintiff failed to heed, Sergeant Ford forced Plaintiff to the ground face first.  Plaintiff, after being taken to the ground, continued to struggle.  At this time, Sergeant Ford administered Oleoresin Capsicum to the head and torso of Plaintiff.  Thereafter, Plaintiff complied with orders given to him, was helped to his feet, and was placed in the shower cell.  Sergeant Ford made a call on his walkie-talkie and both officers left Plaintiff's cell front at approximately 12:48:08 p.m., wing video time.  No action during this sequence of events was done for retaliatory reasons but instead for legitimate penological purposes.

   2. *Second alleged use of force in sallyport.*

  At approximately 12:50:39 p.m., Captain Roundtree, Sergeant Ford, and Officer Moore return to Plaintiff's cell front.  At this time, Mr. Bair committed a number of disciplinary infractions.  At approximately 12:50:52 p.m., the wing video shows Captain Roundtree jumping out of the way of Mr. Bair's attempt to spit on him.  Due to the numerous infractions, it was determined that Plaintiff should be escorted to another wing in H-dorm due to the disturbance that both inmates were causing.

  At approximately 12:51:47 p.m., Mr. McKenzie was escorted off of wing 2 of H-Dorm and placed in another cell by Sergeant Ford and Officer Moore.  Captain Roundtree followed behind them.  No force was used on Plaintiff in the sallyport.

  At approximately 12:53:49 p.m., Captain Stephens, Captain Roundtree, Sergeant Ford, Officer Moore, and Officer Mobley return to wing two of H-dorm to address the situation regarding Mr. Bair.  Hand held video was started on Mr. Bair by Captain Roundtree at approximately 12:58 p.m.  Once the situation with inmate Bair was under control, Captain

Stephens headed over to wing three to begin the handheld video. At approximately 1:15 p.m., Plaintiff, after being escorted to medical, was examined by Nurse H. Sherman. A search of Plaintiff's and Mr. Bair's cell, occurring approximately at 1:15 p.m., resulted in the confiscation of three contraband razor blades. Plaintiff was given two disciplinary reports for the events occurring outside the shower cell on wing two of H-dorm. He lost gain time for both DRs.

   3. *Plaintiff's alleged lack of medical care.*

  Plaintiff was seen numerous times by medical staff both before November 11, 2008 and after November 11, 2008.[3] Plaintiff was also examined by dentists both before November 11, 2008 and after November 11, 2008. Warden Singer is not a doctor and has no medical expertise. He relies on his Chief Health Officer to properly administer health care services to inmates. Warden Singer was not aware that Plaintiff was being denied medical care in November of 2008 or any time thereafter. A mere difference of opinion between a doctor and an inmate as to what medical care should be given does not state a section 1983 claim. Further, to the extent Plaintiff asserts that Warden Singer was on notice of Plaintiff's alleged lack of medical treatment through Plaintiff's filing of grievances, case law does not support this allegation.

   4. *Plaintiff's allegation of Warden Singer's failure to protect.*

  There is no evidence that Captain Stephens, Captain Roundtree, Sergeant Ford, or Officer Moore ever abused or used excessive force on any inmate. All allegations against these officers went through numerous levels of review and all levels found the claims to be unsubstantiated.

  Warden Singer has no recollection of Plaintiff being in any danger from these officers prior to the November 11, 2008 incident. If Warden Singer had been given verifiable information – from any of the various levels of review – that these officers <u>may</u> have been a

---

[3] Plaintiff received more than sufficient medical care to which his seven volume medical file attests.

4

threat to Plaintiff, Warden Singer would have taken the appropriate steps to ensure the safety and security of the Plaintiff. Further, if Warden Singer had been given credible information that Plaintiff may have been in danger from these officers, there would be a record of that information. Warden Singer is not aware of any such record.

As warden of a high security institution, Warden Singer could not allow unsubstantiated allegations to dictate prison staffing or inmate housing assignments. If Warden Singer allowed that to happen, it would have wreaked havoc on the management of the institution as all an inmate would need to do in order to get a transfer to a new dorm or have an officer transferred off a dorm would be to make an unsubstantiated allegation in a grievance or file a lawsuit. Warden Singer would have lost his control over the management of the institution if mere unsubstantiated allegations required staffing reassignments and/or inmate housing changes.

From the information available to Warden Singer, no definitive and actionable conclusion can be drawn that intervention by him was indicated or necessary regarding Captain Stephens, Captain Roundtree, Sergeant Ford, or Officer Moore. Further, the use of force in this case was deemed approved by the Inspector General's Office and the allegations of abuse against Stephens, Roundtree, Ford, and Moore were deemed unsubstantiated.

## Issues for Trial

**Eighth Amendment excessive use of force**

As the Eleventh Circuit has stated concerning the standard for evaluating uses of force:

> Under this standard, we look at "the need for the application of force; the relationship between the need and the amount of force that was used; and the extent of the injury inflicted upon the prisoner." *Id.* (citing *Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085). Additionally, we consider "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085. Not only that, but we must also give a "wide range of deference to prison officials acting to

>preserve discipline and security," including when considering "[d]ecisions made at the scene of a disturbance." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990).

Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007). In this case, the question for the jury is whether Captain Stephens, Captain Roundtree, Sergeant Ford, or Officer Moore used excessive force during any November 11, 2008 use of force.

**Failure to intervene**

If a superior correctional officer fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983. Keating v. City of Miami, 598 F.3d 753, 765 (11th Cir. 2010) (stating that a lower-ranking employee cannot be held liable merely for being present while a higher-ranking officer commits a constitutional violation); Ensley v. Soper, 142 F.3d 1402 (11th Cir. 1998); Byrd v. Clark, 783 F.2d 1002 (11th Cir. 1986). In this case, the question for the jury is whether officers Ragans, Derringer, Givens, or Swift witnessed a constitutional violation take place, had the authority to stop it, and failed to intervene.

**Retaliation**

An inmate may maintain a cause of action for retaliation under 42 U.S.C. § 1983 by showing that a prison official's actions were "the result of [the inmate's] having filed a grievance concerning the conditions of his imprisonment." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). To establish a First Amendment retaliation claim, a prisoner need not allege the violation of an additional separate and distinct constitutional right; instead, the core of the claim is that the prisoner is being retaliated against for exercising his right to free speech. Id. To prevail on a retaliation claim, the inmate must establish that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct

would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). Any force used on Plaintiff was done so for a legitimate penological purpose and not for retaliatory purposes.

**Failure to Protect**

The Eighth Amendment prohibits cruel and unusual punishment; prison officials violate that amendment when they are deliberately indifferent to a substantial risk of serious harm to inmates. In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court set out objective and subjective elements that must be shown to establish an Eighth Amendment violation. About the objective elements, a prisoner must first show that an objectively substantial risk of serious harm existed; and once it is shown that an official is aware of this objectively substantial risk, the official must respond to this risk in an objectively unreasonable manner. Marsh v. Butler County, Ala., 268 F.3d 1014, 1028-29 (11th Cir. 2001). About the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. As Farmer explains, "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" Id. Failure to protect from an objectively significant risk that should have been-but was not-perceived, is no infliction of punishment under the Eighth Amendment. Id. at 838. In order to show an Eighth Amendment constitutional violation, the summary judgment evidence, viewed in the light most favorable to Plaintiff, must show (i) facts presenting an objectively substantial risk to inmates and awareness of these facts on the part of the officials charged with deliberate indifference; (ii) that the officials drew the subjective

inference from known facts that a substantial risk of serious harm existed; and (iii) that the officials responded in an objectively unreasonable manner. Doe v. Georgia Dept. of Corrections, 245 Fed. App'x 899, 902-03 (11th Cir. 2007).

The question for the jury as to Warden Singer is whether 1) Plaintiff shows that an objectively substantial risk of serious harm existed, 2) Warden Singer perceived this objectively substantial risk, and 3) if Warden Singer perceived this objectively substantial risk, did Warden Singer respond to this risk in an objectively unreasonable manner.

**Failure to Provide Medical Care**

A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999). "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" Farrow v. West, 320 F.3d 1235, 1243 (11th Cir.2003) (quoting McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted)); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" Estelle, 429 U.S. at 105-06. Furthermore, because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. Farrow, supra; Taylor v. Adams,

221 F.3d 1254, 1257 (11th Cir. 2000); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995). First, a plaintiff must set forth evidence of an objectively serious medical need. Taylor, 221 F.3d at 1258; Adams, 61 F.3d at 1543. Second, a plaintiff must prove that the prison official acted with an attitude of "deliberate indifference" to that serious medical need. Farmer, 511 U.S. at 834; McElligott, 182 F.3d at 1254; Campbell, 169 F.3d at 1363. Third, as with any tort claim, he must show that the injury was caused by the defendant's wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007) (citing Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995)). No liability arises for an official's failure to alleviate a significant risk that he should have perceived but did not, and imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008). Plaintiff has not shown a claim for failure to provide medical care by Warden Singer.

**Punitive and Compensatory Damages**

Despite his allegations to the contrary, Plaintiff suffered *de minimis* physical injury as a result of any November 11, 2008 use of force. He has produced no medical record or any other evidence other than his own self-serving statements that he suffered more than a *de minimis* physical injury. He is not entitled to either punitive or compensatory damages in this circuit. Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007) (stating that § 1997e(e) precludes an inmate's claims for compensatory and punitive damages without a prior showing of physical injury). Absent physical injury or evidence of such, Plaintiff is precluded from seeking compensatory or punitive damages.

## Motions Pending

Defendants' Motions for Summary Judgment, Plaintiff's Motion for Partial Summary Judgment, and Defendants' Motion to Clarify Order remain pending.

        Respectfully submitted,

        **PAMELA JO BONDI**
        **ATTORNEY GENERAL**

        <u>s/ Lance Eric Neff</u>
        LANCE ERIC NEFF
        Assistant Attorney General
        Florida Bar Number 26626
        Office of the Attorney General
        The Capitol, PL-01
        Tallahassee, Florida 32399-1050
        (850) 414-3300 - Telephone
        (850) 488-4872 - Facsimile
        Email: Lance.Neff@myfloridalegal.com

## **CERTIFICATE OF SERVICE**

I CERTIFY that a true and correct copy of the foregoing has been furnished via CM/ECF to: James V. Cook on this 23rd day of February, 2012.

        <u>s/ Lance Eric Neff</u>
        LANCE ERIC NEFF